UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

FIFTH APP, LLC, a Florida Limited Liability   :
Company, and JOHN HAYES,   :
  :
                  Plaintiffs,   :        **REPORT &**
  :        **RECOMMENDATION**
           -against-   :
  :        22-cv-06607 (DG) (PK)
ALPHA MODUS VENTURES, LLC, a North   :
Carolina Limited Liability Company, and   :
WILLIAM ALESSI,   :
  :
             Defendants.   :

-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

John Hayes ("Hayes") and Fifth App LLC ("Fifth App" and, together with Hayes, "Plaintiffs") brought this action against William Alessi ("Alessi") and Alpha Modus Ventures LLC ("AMV" and, together with Alessi, "Defendants"), alleging breach of contract, fraud, and tort claims regarding the assignment of a set of patents. ("Am. Compl.," Dkt. 14.)

Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Alessi, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim. ("Motion," Dkt. 31.) The Honorable Diane Gujarati referred the Motion to me for a report and recommendation. (January 22, 2024 Order.) For the reasons below, I respectfully recommend that the Motion be denied in part and granted in part.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the Amended Complaint, the Motion, and documents filed in support of the Motion.

I.      **Factual Background**

A.      *Discussions Leading to the Memorandum of Understanding ("MOU")*

Before 2021, Hayes was the inventor and holder of a set of patents and patent applications related to Fibre Channel over Ethernet communication networks ("FCoE Patents").  (Am. Compl. ¶ 1.)

In early 2021, Hayes and Defendants began discussing a business transaction pursuant to which Hayes would assign his FCoE Patents to Defendants in exchange for Defendants' assistance with protecting and expanding the portfolio of FCoE Patents.  (*Id.* ¶ 29.)  Under the deal, Defendants would monetize the patents by licensing them and pursuing litigation against infringers, and Plaintiffs would receive a percentage of the damages recovered and license fees received.  (*Id.* ¶ 2.)

On January 25, 2021, Hayes and members of AMV—including AMV's CEO Alessi and Louis Adimando, AMV's general counsel based in Staten Island, New York—conducted a videoconference to discuss the transaction's terms.  (*Id.* ¶¶ 21, 29.)  Plaintiffs allege that during this videoconference, Alessi "repeatedly stated that he had the personal capacity to fund litigation against infringers of the FCoE Patents."  (*Id.* ¶ 29.)  From January 25, 2021 through February 15, 2021, Hayes and Alessi exchanged emails and had phone discussions to further negotiate the terms of the agreement.  (*Id.* ¶¶ 30–31.)  These communications included exchanging patent claims infringement charts and draft term sheets.  (*Id.*)  Hayes and Adimando also negotiated deal terms during this time.  (*Id.*)

On February 14, 2021, Adimando emailed a term sheet to Hayes, and on February 15, 2021, Hayes, Alessi, Adimando, and other members of AMV conducted another videoconference to discuss terms.  (*Id.* ¶¶ 32–33.)  Adimando joined the videoconference from Staten Island.  (*Id.*)  Plaintiffs allege that Alessi again stated at this meeting that "he had the personal funds sufficient to

finance litigation against infringers of the FCoE Patents and would commit those funds to AMV for the purpose of meeting the proposed terms of the MOU." (*Id.* ¶ 34.) Alessi promised that Hayes could choose the patent litigator used by AMV and that Hayes would be kept informed about progress on due diligence, litigation, and licensing. (*Id.*) Alessi also reaffirmed his understanding of the terms of the MOU, the contingencies for retaining ownership of the FCoE Patents, and his intention to meet his contractual obligations. (*Id.*)

On February 16, 2021, Adimando sent Hayes an e-mail attaching a copy of the MOU, which was on "Alpha Modus" letterhead and signed by Alessi. (*See* Ex. A to Am. Compl., Dkt. 14-1.) The next day, on February 17, 2021, Hayes executed the MOU on behalf of Fifth App. (*Id.*)

### B.    *The MOU*

The MOU states that its "governing premise" is that AMV is "offering to monetize the [FCoE Patents] via litigation, licensing, etc." (MOU at 1.) In exchange for AMV's acquisition of all rights and privileges in the FCoE Patents, AMV agreed "to deliver to the Company twenty-five percent (25%) of the net recovery whether in litigation or through licensing efforts / agreements, etc. that [AMV] is able to obtain during the agreement." (*Id.* ¶ 1.) The MOU also described a set of obligations that, if not met by AMV, would cause the FCoE Patents to revert to Fifth App. (*Id.* ¶ 4 ("Reversion of Patent").) These obligations included completion of initial due diligence within 120 days, expanding claims and filing for new patents within 6 months, and filing or finalizing filing litigation within 18 months. (*Id.*)

The MOU also contains a forum selection clause and joint and several liability provision.

The forum selection clause states:

**(19) GOVERNING LAW, VENUE:** This Letter of Intent shall be governed by the laws of the State of New York, without giving effect to its principles of conflicts of law. The parties hereto hereby irrevocably submit to the exclusive jurisdiction of any New York or Federal court sitting in Richmond County Only, New York, over any suit, action or proceeding arising out of or relating to this contemplated transaction.

(*Id.* ¶ 19.)

The joint and several liability provision states:

**(9) JOINT AND SEVERAL OBLIGATIONS,** an authorized individual will sign all agreements for the **Company** and one or more authorized individuals will sign all agreements for the **Acquirer,** where applicable, or entities, the signatories of which are jointly and severally bound by the agreement.

(*Id.* ¶ 9.)  The MOU identifies Fifth App as the "Company" and AMV as the "Acquirer."  (*Id.* at 1.)

Hayes signed his name under the words "**FIFTH APP, LLC**" and on the byline after "By:" (*Id.* at 4.)  Below his printed name is his title, "Managing Member."  (*Id.*)  Alessi signed his name above his title, "CEO, Alpha Modus Ventures, LLC."  (*Id.*)  AMV's name does not appear in the signature block as a separate entity, but only to identify Alessi's title.  (*Id.*)

### C.    *Subsequent Events*

At the time the MOU was negotiated and executed, AMV had not yet been incorporated.  It was incorporated two weeks later, on March 3, 2021, when its articles of incorporation were filed with the North Carolina Secretary of State.  (*See* AMV LLC Articles of Organization, Dkt. 31-2; *see also* AMV LLC Operating Agreement at 1, Dkt. 31-1 ("The Company was formed on March 3, 2021 when the organizer and Member William Alessi filed the Articles of Organization with the office of the Secretary of State.").)

The MOU required the execution of several additional ancillary documents in order to fulfill its terms.  (Am. Compl. ¶ 43.)  Among them was a Patent Assignment Agreement ("PAA") by which Hayes assigned the FCoE Patents to AMV so that AMV would have standing to pursue litigation claims against infringers.  (*See* Dkt. 11-1; Am. Compl. ¶ 3.)  Hayes and AMV executed the PAA with an effective date of February 17, 2021.  (Dkt. 11-1.)

Plaintiffs allege that "[b]y March 2022, it was clear that AMV was incapable of initiating litigation against potential infringers or otherwise monetizing the FCoE Patents—another prerequisite to retaining rights to the FCoE Patents."  (Am. Compl. ¶ 8.)  Specifically, Plaintiffs

allege that AMV failed to, as required by the MOU: (1) retain the services of Plaintiffs' preferred counsel, Wanda French-Brown; (2) provide the due diligence report by June 16, 2021; (3) complete or undertake any initial due diligence; (4) initiate litigation or proceed to the final stages of initiating litigation against infringers of the FCoE Patents; and (5) monetize or proceed to the final stages of monetizing the FCoE Patents through other measures such as licensing agreements. (*Id.* ¶¶ 52–60.)

Plaintiffs also allege that Alessi falsely represented—both in negotiations and in the MOU—that AMV would protect, monetize, and expand the portfolio of Plaintiffs' patents and pursue claims against infringers. (*Id.* ¶ 2.) Specifically, Plaintiffs allege that Alessi falsely represented that: (1) he and AMV would "comply substantially" with the MOU; (2) AMV was an "existing business entity" at the time of signing the MOU; (3) Alessi was an "authorized signatory" of AMV at the time of signing the MOU; (4) Alessi had the resources to "personally finance pre-lawsuit due diligence into potential [infringement] claims" if AMV failed to secure financing; and (5) AMV would keep Plaintiffs' preferred counsel French-Brown involved in all litigation efforts. (*Id.* ¶ 4.)

On March 3, 2022, Hayes sent a demand letter to Defendants for return of the FCoE Patents based on the reversionary provisions in the MOU. (*Id.* ¶ 61.) Alessi did not respond to this demand letter. (*Id.*) On March 31, 2022, Adimando and French-Brown (as members of AMV), provided Hayes with a document assigning the FCoE Patents back to Hayes, which Hayes subsequently filed with the USPTO. (*Id.* ¶ 62.) Around June 2022, Alessi filed documents with the USPTO claiming that AMV was the lawful owner of the FCoE Patents. (*Id.*) The USPTO records currently indicate that AMV is the assignee of the FCoE Patents. (*Id.*)

## II.    Procedural History

Plaintiffs filed this action on October 31, 2022 and the Amended Complaint on February 21, 2023. The Amended Complaint alleges six causes of action: (1) breach of contract against Defendants; (2) breach of the implied covenant of good faith and fair dealing against Defendants;

5

(3) fraudulent inducement and fraudulent concealment against Alessi; (4) fraudulent inducement and fraudulent concealment against AMV; (5) tortious interference against Alessi; and (6) declaratory and injunctive relief against Defendants. (*Id.* ¶¶ 117–18.)

Defendants move to dismiss on three grounds: (1) lack of personal jurisdiction over Alessi pursuant to Fed. R. Civ. P. 12(b)(2); (2) improper venue pursuant to Rule 12(b)(3); and (3) failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Motion, Dkt. 31; "Mem.," Dkt. 31-1.) Plaintiffs filed an opposition ("Opp.," Dkt. 35), and Defendants filed a reply. ("Reply," Dkt. 33.) The parties also submitted supplemental briefing as requested by the Court. ("Def. Supp. Mem.," Dkt. 37; "Pl. Supp. Mem.," Dkt. 38.)

## DISCUSSION

## I.    Motion to Dismiss for Improper Venue

Defendants assert that this action is improperly filed in New York, and thus this case should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). (Mem. at 4.)

### A.    *Legal Standards*

Title 28 U.S.C. § 1391(b), "Venue in General," provides that a civil action may be brought: (1) in the district where any defendant resides, if all defendants are residents of the same state; (2) in the district where a substantial part of the events, omissions, or property giving rise to the claim are located; or (3) if neither (1) nor (2) applies, in any district where any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b).

A venue that is otherwise invalid under 28 U.S.C. § 1391 may be chosen by parties in an enforceable forum selection clause. *See Coface v. Optique Du Monde, Ltd.*, 521 F.Supp 500, 505–506 (S.D.N.Y. 1980) (recognizing that venue in New York would be improper under 28 U.S.C. § 1391 and so, "if venue does lie in [New York], it must be as a result of" valid forum selection clause); *Nymbus, Inc. v. Sharp*, No. 17-CV-1113 (JAM), 2018 WL 705003 at *6 (D. Conn. Feb. 5, 2018)

(holding "statutory venue factors are inapplicable" when enforcing valid forum selection clause and that "[t]he venue statute 'merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election'"); *see also Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue."); *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013) ("[W]hen parties have agreed to a valid forum-selection clause, that clause should be given controlling weight in all but the most exceptional cases.").

Forum selection clauses are presumptively enforceable and should control issues of venue—and personal jurisdiction, discussed *infra*—absent a "strong showing" that enforcement would be "unreasonable and unjust, or that the clause was invalid." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972). The Second Circuit has articulated a four-part burden-shifting test to ensure the validity of a forum selection clause. The party invoking the forum selection clause must show that the clause (1) was reasonably communicated to the party challenging enforcement; (2) is mandatory in nature; and (3) encompasses the plaintiff's claims. *Phillips v. Audio Active Ltd.*, No. 05-CV–7017, 494 F.3d 378, 383 (2d. Cir. 2007). If these conditions are satisfied, the clause must be enforced, unless (4) the opposing party makes a sufficiently strong showing that enforcement would be unreasonable or unjust. *Id.* at 384. When the contract at issue contains both a choice-of-law provision and a forum selection clause, as is the case here, the chosen law governs the analysis for parts two and three of the inquiry as substantive questions of contract law. *Martinez v. Bloomberg LP*, 740 F.3d 211, 217–18 (2d Cir. 2014).

In deciding whether to enforce a forum selection clause, a court may rely on "pleadings and affidavits," *Anwar v. Fairfield Greenwich Ltd.*, 742 F.Supp.2d 367, 371 (S.D.N.Y. 2010) (citing *Tropp v. Corp. of Lloyd's*, 385 Fed. Appx. 36, 37 (2d Cir. 2010), but "[a] disputed fact may be resolved in a

manner adverse to the plaintiff only after an evidentiary hearing." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d. Cir. 1986)). Thus, prior to any evidentiary hearing, the Court must view the facts in the light most favorable to Plaintiffs. *Anwar*, 742 F. Supp. 2d at 371.

## B.    *Application of Law to the Facts*

The MOU's forum selection clause exclusively grants venue in any "New York or Federal court sitting in Richmond County," which includes the United States District Court for the Eastern District of New York. (MOU ¶ 19.) Thus, whether the case is properly venued in this District turns on whether the MOU's forum selection clause is valid and enforceable.

### 1.    <u>Reasonably Communicated to the Party Challenging Enforcement</u>

In order to be valid, a forum selection clause must have been reasonably communicated to the party challenging enforcement. *Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 604 (E.D.N.Y. 2011). A forum selection clause is reasonably communicated if it is written in "clear and unambiguous language" in standard font and is included in the main body of the contract. *Id.* at 604–05. Additionally, it is reasonably communicated if the opposing party "carefully considered, reviewed, and edited the underlying [agreement]." *See Power UP Lending Group, Ltd v. Murphy*, No. 16-CV-1454 (ADS)(AYS), 2016 WL 6088332, at *6 (E.D.N.Y. Oct. 18, 2016) (finding that the forum selection clause was reasonably communicated to the individual non-signatory defendants because they had carefully drafted the agreement with plaintiff through rounds of meetings and editing).

The MOU's forum selection clause was reasonably communicated to Alessi. It states in clear and unambiguous language, "The parties hereto hereby irrevocably submit to the exclusive jurisdiction of any New York or federal court sitting in Richmond County Only, New York, over any suit, action, or proceeding arising out of or relating to this contemplated transaction." (MOU ¶

8

19.)  It is written in the same font as the rest of the contract and included in the main body of the contract.  (*Id.*)  Its title "**GOVERNING LAW, VENUE**" clearly states the section's purpose and was formatted in bold and all capital letters, causing it to stand out against the main text.  (*Id.*)

Moreover, Alessi was actively involved in multiple meetings to discuss the agreement's terms and participated in editing and drafting the final MOU.  (Am. Compl. ¶¶ 29–34; Mem. at 12–14.)  The final MOU, which appears on "Alpha Modus" letterhead, was circulated to the parties by Alessi's lawyer.  (Am. Compl. ¶ 36.)  It is clear that Alessi reviewed the forum selection clause before he signed it.

Therefore, I find that the MOU's forum selection clause was reasonably communicated to Alessi.

### 2. <u>Mandatory in Nature</u>

A forum selection clause is mandatory if "it provides for exclusive jurisdiction over any dispute arising in connection with" the contract at issue and requires resolution in a selected forum.  *Salis v. Am. Export Lines*, 331 Fed. Appx. 811, 814 (2d. Cir. 2009); *Baosteel Am., Inc. v. M/V "OCEAN LORD"*, 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2003).  "[T]here are no magic words…that must appear in a contract to create an effective designation of an exclusive forum," *Water Energizers Ltd. v. Water Energizers, Inc.*, 788 F. Supp. 208, 212 (S.D.N.Y. 1992), but it must include some kind of "mandatory or exclusive language."  *See Scherillo v. Dun & Bradstreet, Inc.*, 684 F.Supp.2d 313, 323 (E.D.N.Y. 2010) (finding a clause stating "courts shall have exclusive jurisdiction" sufficiently mandatory).

The MOU's forum selection clause clearly states that the parties "submit to the *exclusive jurisdiction*" of any court in Richmond County, New York, and that this applies to "*any* suit, action or proceeding arising out of or relating to this contemplated transaction."  (MOU ¶ 19 (emphases added)).  There is no additional language indicating any exceptions.

Therefore, I find that the MOU's forum selection clause is mandatory. *See Meritage Hosp. Grp., Inc. v. N. Am. Elite Ins. Co.*, 72 Misc. 3d 1211(A), 148 N.Y.S.3d 896 (N.Y. Sup. Ct. 2021) (analyzing forum selection clause with similar language).

### 3. **Encompasses Plaintiffs' Claims**

A forum selection clause must cover Plaintiffs' claims to be enforceable. *Magi XXI*, 818 F. Supp. 2d at 604. Under New York law, the language of the forum selection clause itself, not the nature of the underlying action, "determines which claims fall within its scope." *Couvertier v. Concourse Rehab. & Nursing, Inc.,* 117 A.D.3d 772, 773, 985 N.Y.S.2d 683, 684 (2014). Because the MOU's forum selection clause covers "any" suit, action, or proceeding "arising out of or relating to" AMV's purchase of Hayes' patents, I find that it encompasses all of Plaintiffs' claims in this action. *See id.* (upholding forum selection clause with similar language stating that court had jurisdiction over "[a]ny and all claims arising out of or related to th[e] Agreement").

### 4. **Not Unreasonable or Unjust**

Because I find that the forum selection clause was reasonably communicated to the resisting party, has mandatory force, and covers the claims involved in the dispute, the clause is presumptively enforceable unless Defendants make a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for reasons such as fraud or overreaching. *Magi XXI*, 818 F. Supp. 2d at 604. Forum selection clauses are "unreasonable" only if (1) their incorporation…was the result of fraud or overreaching; (2) the party opposing enforcement "will for all practical purposes be deprived of his day in court," due to severe inconvenience or unfairness; (3) the chosen law may deprive one party of a remedy; or (4) it contravenes a strong public policy of the forum state. *Id.* at 610; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen*, 407 U.S. at 15, 17. Courts have found that mere inconvenience cannot be the reason for non-enforcement because the parties would have been able

to consider this factor in a "freely negotiated private…agreement." *Id.* at 16; *Magi XXI*, 818 F. Supp. 2d at 618 (collecting cases).

Defendants have failed to rebut the enforceability of the forum selection clause as unreasonable or unjust. Defendants submit no evidence to suggest that the incorporation of the clause was the result of fraud or overreaching. The contract was drafted, reviewed, and edited multiple times by Defendants and AMV's general counsel. (Am. Compl. ¶¶ 21, 31–32.) After Hayes and Alessi initially met by videoconference on January 25, 2021 to discuss the terms of the agreement, they exchanged a series of emails between January 25, 2021 and February 15, 2021 in furtherance of executing the MOU, including draft MOU term sheets. (*Id.* ¶¶ 21, 29, 30–32.) On February 15, 2021, Alessi and Hayes met by videoconference again to review the MOU's terms, at which time Alessi reaffirmed the terms, the various milestones and contingencies for retaining the patents, and his duties under the MOU. (*Id.* ¶¶ 33–34.) On February 16, 2021, Adimando emailed Hayes and Alessi a final draft of the MOU on "Alpha Modus" letterhead. (*Id.* ¶ 36.)

Defendants also have not shown that they will be deprived of their day in court due to severe inconvenience or unfairness in New York. *See Magi*, 818 F. Supp. 2d at 613–615 (finding that for a forum to be severely inconvenient or unfair there would need to be significant corruption or bias so as to render the forum almost incapable of rendering a fair verdict) (collecting cases). Defendants cannot argue that New York would be inconvenient given that Alessi freely negotiated the MOU with the assistance of counsel, who is based in New York. *M/S Bremen*, 407 U.S. at 16 (finding that parties that have freely negotiated a private agreement would have been able to consider inconvenience prior to signing the agreement and thus cannot mitigate against enforcing a forum selection clause). There is also no evidence that New York law is so fundamentally unfair that Alessi would be deprived of a remedy. *See Jalee Consulting Group, Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 396 (S.D.N.Y. 2012) (finding that the law is not fundamentally unfair if it is merely

11

more convenient to litigate elsewhere, particularly if the inconvenience was "perfectly foreseeable when [the parties] entered the agreement").

Finally, Defendants provide no evidence to suggest that the MOU's forum selection clause contravenes a strong public policy of New York. New York courts allow "a somewhat broader degree of discretion regarding the enforcement of forum selection clauses" than federal courts, which suggests no public policy against enforcing freely negotiated and agreed-upon forum selection clauses. *Koninklijke Philips Elecs.*, 358 F. Supp. 2d at 328.

Therefore, I find that the MOU forum selection clause is valid and enforceable, and the Eastern District of New York is a proper venue for this action.

## II.    Motion to Dismiss against Alessi for Lack of Personal Jurisdiction

Defendants seek to dismiss the action against Alessi pursuant to Rule 12(b)(2) on the basis that this Court lacks personal jurisdiction over him.

### A.    Forum Selection Clause as Basis for Jurisdiction

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Shipco Transp., Inc. v. Roll on Roll off Co., LLC*, 684 F. Supp. 3d 156, 159 (S.D.N.Y. 2023) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). Where the court does not conduct a full-blown evidentiary hearing and relies on pleadings, affidavits, and declarations, the plaintiff "must only make a '*prima facie* showing of personal jurisdiction.'" *Shipco Transp., Inc.*, 684 F. Supp. 3d at 159 (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)). A court construes the pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in its favor, but does not accept as true legal conclusions couched as factual allegations. *Shipco Transp., Inc.*, 684 F. Supp. 3d at 160.

A district court may exercise personal jurisdiction over a non-domiciliary defendant if the defendant (a) consented to a valid and enforceable forum selection clause, or (b) its exercise of

jurisdiction is proper under the laws of New York and comports with the due process clause of the Constitution. *Id.* (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)).

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co.*, 462 F.3d at 103. "Because the personal jurisdiction requirement is a waivable right…[w]here such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust'…their enforcement does not offend due process." *Shipco Transp., Inc.*, 684 F. Supp. 3d at 160–161 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)). Accordingly, when a defendant consents to personal jurisdiction in a forum selection clause, "it is not necessary to analyze jurisdiction under an applicable long arm statute or federal constitutional requirements of due process." *Power UP Lending Group, Ltd.*, 2016 WL 6088332, at *4; *Koninklijke Philips Elecs.*, 358 F.Supp.2d at 333–34 & n.5; *ICC Indus., Inc. v. Israel Disc. Bank, Ltd.*, No. 04-CV-6945 (DC), 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005), *aff'd*, 170 F. App'x 766 (2d Cir. 2006).

### B.  *Enforceability of Forum Selection Clause against Alessi*

As discussed *supra*, the MOU contains a valid and enforceable forum selection clause. Defendants do not dispute that the forum selection clause subjects AMV, as a party to the MOU, to this Court's jurisdiction. However, Defendants argue that the forum selection clause in the MOU is limited to the contractual parties, and applying the clause to Alessi would raise due process concerns. (*See* Mem. at 14–15.)

I find that the MOU's forum selection clause is enforceable against Alessi on several independent grounds.

13

### 1.  **Closely Related Doctrine**

"[F]orum selection clauses will be enforced even against non-signatories where they meet the 'closely related' standard." *Firefly Equities, LLC v. Ultimate Combustion Co.,* 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010); *see also Aguas Lenders Recovery Group v. Suez, S.A.,* 585 F.3d 696, 701 (2d Cir. 2009) ("We find ample support for the conclusion that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."). The "closely related" standard is met if "a non-signatory…is so closely-related to the actual signatories or the dispute that enforcement of the forum selection clause against it is reasonably foreseeable." *Power Up Lending Group, Ltd.,* 2019 WL 2119844, at *6 (citing *Am. Med. Distributors, Inc. v. Saturna Grp. Chartered Accts., LLP,* No. 15-CV-6532(ADS)(GRB), 2016 WL 3920224, at *4 (E.D.N.Y. July 15, 2016); *see also Firefly Equities, LLC,* 736 F. Supp. 2d at 799 (collecting cases). A signatory and a non-signatory's "close business relationship" may satisfy the "closely related" test if the facts indicate that their business operations were "essentially intertwined." *Power Up Lending Group, Ltd.,* 2019 WL 2119844, at *7. Courts have found the closely related test satisfied based on facts such as the non-signatory's role as principal in the signatory company, direct involvement in discussions about the contract, and personally signing the contract. *See, e.g.,* *Firefly Equities,* 736 F. Supp. 2d at 800; *Power Up Lending Group, Ltd.,* 2019 WL 2119844, at *7; *Am. Med. Distributors, Inc.,* 2016 WL 3920224, at *4; *Thibodeau v. Pinnacle FX Invs.,* No. 08-CV-1662 (JFB)(ARL), 2008 WL 4849957, at *5 (E.D.N.Y. Nov. 6, 2008).

Similar facts exist here. Alessi held himself out to be the CEO of AMV, and during the spring of 2021, was the primary representative on the AMV side who negotiated with Hayes regarding the terms of the acquisition. Alessi committed his personal funds to ensuring AMV would meet its obligations under the MOU on two separate occasions. (Am. Compl. ¶ 4.) Finally, Alessi personally signed the contract. Although he now claims he signed the MOU only in a representative

14

capacity, it should have been reasonably foreseeable to Alessi that the forum selection clause would be enforced against him because AMV did not exist yet at the time the MOU was signed. Enforcing the MOU's forum selection clause against Alessi as someone closely related to AMV is consistent with the cases in the Second Circuit which have authorized enforcement of forum selection clauses against non-signatory principals of signatory parties, "because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause." *Firefly Equities*, 736 F. Supp. 2d at 800.

I, therefore, find that Alessi and AMV were so closely related such that this Court may exercise jurisdiction over Alessi.

### 2. Joint and Several Liability Provision

Alternatively, the MOU's "Joint and Several Obligations" provision binds Alessi personally to the MOU, including to its forum selection clause. It states that "an authorized individual will sign all agreements for the Company and one or more authorized individuals will sign all agreements for the Acquirer**,** where applicable, or entities, the signatories of which are jointly and severally bound by the agreement." (MOU ¶ 9.)

Under New York law, an individual who signs an agreement on behalf of a corporation will be held responsible if "there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Paribas Properties, Inc. v. Benson*, 146 A.D.2d 522, 525, 536 N.Y.S.2d 1007, 1009 (N.Y. App. Div. 1st Dept. 1989) (citing *Mencher v. Weiss*, 306 N.Y. 1, 4, 114 N.E.2d 177 (1953)). In *Paribas Properties, Inc.*, the court found that the defendant's signature in his representative capacity bound him as an individual because the three-page contract was not a "lengthy trap for an unwary agent," and the contract included a joint and several liability provision that clearly stated that the defendant and his company would both be liable to the plaintiff.

536 N.Y.S.2d at 1008–1009 ("all our obligations set forth herein and in the [] letter shall be joint and several obligations of [the defendants]").

Here, the MOU is short, consisting of fewer than four pages, and contains a provision clearly intended to bind both the individuals who signed for the "Company" and "Acquirer" (Fifth App and AMV, respectively). Defendants protest in a footnote that binding Alessi under this provision would be "nonsensical" because "the word 'signatories' is most naturally read to refer to the parties to the agreement—not to their corporate officers individually." (Mem. at n.10.) I disagree. Adopting Defendants' reading would render the provision wholly superfluous and, therefore, nonsensical. If the term "signatories" in this provision referred to the corporate parties rather than the individuals who are explicitly described as signing the MOU, there would be no need to have a separate clause which binds the signatories "jointly and severally" to the MOU. Thus, I find the reasonable interpretation of "signatories" in the context of this provision to mean the authorized "individuals" who the MOU states "will sign" all agreements for Fifth App and AMV. This includes both Hayes and Alessi. As the individual who signed for AMV, Alessi is "jointly and severally bound by the agreement," including its forum selection clause.

### 3. Alessi as a Party-Signatory to the MOU

Finally, I find that Alessi is bound by the forum selection clause, and subject to this Court's personal jurisdiction, because AMV was not incorporated, and therefore did not exist, at the time Alessi signed the MOU. Alessi signed the MOU on February 16, 2021 (Am. Compl. ¶ 36); AMV was not incorporated until March 3, 2021 (*see* AMV LLC Articles of Organization). Because AMV did not exist on February 16, 2021, Alessi had no authority to sign the MOU on its behalf. Therefore, Alessi should be considered a signatory to the contract not only in a representative capacity, but also as a signatory who is personally bound to the forum selection clause.

As a threshold matter, the Court applies North Carolina law to the analysis of Alessi's pre-incorporation liability. New York recognizes the internal affairs doctrine, *see KDW Restructuring & Liquidation Servs. LLC v. Greenfield,* 874 F.Supp.2d 213, 221 (S.D.N.Y. 2012), which provides that, "in disputes involving directors' liability, there is a presumption in favor of applying the substantive law of the state of incorporation." *In re Luxottica Group S.p.A., Securities Litig.,* 293 F. Supp. 2d 224, 237 (E.D.N.Y. 2003) (citing Restatement (Second) of Conflict of Laws § 309 (1971)). Thus, the internal affairs doctrine creates "a [rebuttable] presumption in favor of applying the law of the state of incorporation." *Resolution Trust Corp. v. Gregor,* 872 F.Supp. 1140, 1150 (E.D.N.Y. 1994); *cf. Tyco Int'l, Ltd. v. Kozlowski*, 756 F.Supp.2d 553, 560 (S.D.N.Y. 2010) ("In New York, the internal affairs doctrine is applied only as one factor in an analysis where 'the law of the state with the greatest interest in the issue governs.'"). The parties do not dispute that North Carolina law applies to this issue, and there is no evidence that New York has a greater interest than North Carolina in the substantive dispute. *See id.* at 560 (ruling that a state that "only [has] limited connection to the conduct at issue" and where the conduct at issue occurred in the other state does not have a greater interest in applying their law). Therefore, North Carolina law applies.

Under North Carolina law, if "a party assumes to act as agent for another [and has] no authority…he will be held to be personally liable to the party with whom he deals…" *Fowle v. Kerchner*, 87 N.C. 49 (N.C. 1882). Additionally, North Carolina courts have found that "[w]here there has been a novation of the promoter's contract by the corporation, the corporation will be liable on the contract. That is, a promoter who is personally liable on a corporation's pre-incorporation contracts may be released from liability upon a novation." *Beachboard v. Southern Railway Co.*, 193 S.E.2d 577, 581 (N.C. Ct. App. 1972) ("While no formal ratification of the agreement has been shown . . . by accepting the benefits the company becomes bound to perform the obligations incident to such a contract.").

17

Defendants argue that Alessi was acting as a promoter for AMV, and, because AMV ratified the MOU upon its incorporation, the MOU does not bind Alessi personally. (Def. Supp. Mem. at 6–7.) This argument does not release Alessi from the forum selection clause for two reasons. First, even if Alessi were released from liability after AMV was incorporated and the MOU was ratified, his individual liability still existed at the time he signed the MOU on February 17, 2021. Therefore, Alessi indisputably consented to the MOU's forum selection clause at that time, and must be subject to personal jurisdiction under that provision. Second, even if the Court finds that AMV ratified the MOU, the MOU's joint and several liability provision—as discussed *supra*—still binds Alessi to the forum selection clause and subjects him to this Court's jurisdiction.[1]

## III.    Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), Defendants move to dismiss the following claims for failure to state a claim: (1) Plaintiffs' claims for fraudulent inducement and fraudulent concealment against both Alessi and AMV, (2) Plaintiffs' claim for tortious interference against Alessi, and (3) Plaintiffs' claims for declarative and injunctive relief.

### A.    *Standard of Review*

To survive a 12(b)(6) motion, a plaintiff's allegations must be supported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts as true "all allegations in the complaint" and "draw[s] all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal citation omitted). Nonetheless, "[t]hreadbare recitals of the elements of a cause of action,

---

[1] Because I find that this Court has personal jurisdiction over Alessi on the basis of the forum selection clause, I decline to consider Plaintiffs' alternative arguments to establish jurisdiction under N.Y.C.P.L.R. § 302, *e.g.*, that Alessi was or is the alter ego of AMV, that Adimando was the agent of Alessi, or that Adimando was the partner of Alessi.

supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The court considers the plausibility of a plaintiff's allegations in context by "draw[ing] on its judicial experience and common sense." *Id.* at 679. A complaint should not be dismissed "unless [the court] is satisfied that the complaint cannot state any set of facts that would entitle [plaintiff] to relief." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (internal citation omitted).

### B.    *Fraud Claims (Third and Fourth Causes of Action)*

The Amended Complaint asserts claims for fraudulent inducement and fraudulent concealment against Alessi (Third Cause of Action) and against AMV (Fourth Cause of Action). The allegedly fraudulent or concealed statements that are the basis for these claims are pled at paragraphs 83 and 86. Paragraph 83 references the misrepresentations—set forth in paragraphs 2, 4, 29, 32–34, 36–37, and 48—that allegedly induced Plaintiffs into entering the MOU. Paragraph 86 lists the misrepresentations and material facts—from 86(1) to 86(8)—that Plaintiffs claim Defendants fraudulently concealed. Plaintiffs' descriptions of the allegedly fraudulent statements frequently overlap across paragraphs in the Amended Complaint.

Defendants argue that the fraud claims must be dismissed because Plaintiffs have not met the heightened Rule 9(b) pleading standard for fraud claims, and the fraud claims are impermissibly duplicative of Plaintiffs' contract claims. (Mem. at 17.)

### 1.   **Pleading Standard**

Under Rule 9(b), a complaint alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Specifically, a plaintiff must "(1) detail the statements (or omissions); (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (quotation marks omitted). A plaintiff alleging fraud must also plead scienter by "alleg[ing] facts that give rise to a strong inference of fraudulent intent."

*Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (emphasis in original) (quotation marks omitted).   A complaint may satisfy the scienter requirement "either (a) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (b) by alleging facts to show that defendants had both motive and opportunity to commit fraud." *Id.*

## 2. <u>Restatement of Contract Claims</u>

Regardless of whether the Rule 9(b) pleading standard is met, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006).  "Thus, general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim." *Id.* Rather, "for a fraud claim to survive a motion to dismiss in the context of a contract dispute, a plaintiff must show (1) that the fraud arises from some legal duty that is distinct from the duty to perform under the contract; (2) that the defendant has made a fraudulent misrepresentation collateral or extraneous to the contract (the 'collateral promise rule'); or (3) that the plaintiff is entitled to special damages caused by the fraud which are not recoverable as contract damages." *Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 759 (S.D.N.Y. 2000) (collecting cases).  A misrepresentation is collateral to the contract when it involves "misstatements and omissions of present fact" and not "contractual promises regarding prospective performance." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007).

Allegations that clearly reference Defendants' duty to perform under the MOU cannot support a fraud claim.  Accordingly, I find that the following alleged misrepresentations may not support a fraudulent inducement or fraudulent concealment claim:  Am. Compl. ¶ 2 (that AMV would protect, expand, and monetize the FCoE Patents); ¶ 4(a) (that Defendants would comply with

the MOU); ¶ 32 (Hayes received a term sheet reflecting Alessi's position);[2] ¶ 33 (Hayes and members of AMV, including Alessi, discussed preliminary terms of the agreement); ¶ 34 (that Alessi reaffirmed the terms of the agreement); ¶ 36 (Hayes received a copy of the MOU signed by Alessi); ¶ 37 (that ownership of the FCoE patents would revert to Plaintiffs under the MOU if milestones were not met); ¶ 86(3) (that Alessi had no intention to retain French-Brown to conduct initial due diligence); ¶ 86(7) (that Alessi had no intention of keeping French-Brown updated on litigation efforts); and ¶ 86(8) (that Alessi had no intention of honoring the MOU).

### 3. Fraudulent Inducement

Of the misrepresentations alleged in the Amended Complaint that do not clearly reference Defendants' duty to perform under the MOU, Plaintiffs rely on the following statements as the basis for their fraudulent inducement claims:

- That AMV was an existing business entity at the time Plaintiffs entered into the MOU (¶¶ 4(b), 37);
- That Alessi was an authorized signatory of AMV at the time it entered into agreements with Plaintiffs (¶¶ 4(c), 37);
- That Alessi had sufficient resources to personally finance pre-lawsuit due diligence into potential claims against potential infringers of the FCoE Patents if AMV could not secure capital investments or other funding from a litigation finance company to pursue litigation. (¶¶ 4(d), 29);
- That Alessi had sufficient resources to personally finance subsequent litigation against potential infringers of the FCoE Patents if AMV could not secure capital investments or other funding from a litigation finance company to pursue litigation (¶¶ 4(e), 29, 34);
- That AMV had retained or would retain the services of French-Brown, a patent litigation attorney, to conduct due diligence on the FCoE Patents (¶ 4(f), 34);
- That AMV would keep plaintiff's preferred patent litigator, French-Brown, involved in and apprised of the efforts to litigate claims against potential infringers of the FCoE Patents if French-Brown did not directly represent AMV in the litigation (¶ 4(g)); and
- That Alessi was the sole owner and shareholder of AMV (¶ 48).

In order to state a claim for fraudulent inducement, the plaintiff must allege that "(1) defendant made a misrepresentation as to a material fact; (2) such misrepresentation was false; (3)

---

[2] Paragraph 83 of the Amended Complaint references material misrepresentations made by Alessi to Plaintiffs as "set forth in paragraphs…32–34, 36–37…" Paragraphs 32–34 and 36 do not contain statements per se, but instead describe the circumstances under which the misstatements were made.

defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Digilytic Int'l Fze v. Alchemy Fin., Inc.*, No. 20-CV-4650 (ER), 2022 WL 912965, at *7 (S.D.N.Y. Mar. 29, 2022) (quoting *Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012)). "A successful fraudulent inducement claim [involving a contract] should be 'premised on misrepresentations [of material fact] that were made before the formation of the contract and that induced the plaintiff to enter the contract.'" *Digilytic*, 2022 WL 912965, at *7 (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994)) (alterations added).

Plaintiffs plead that Alessi knowingly made the misrepresentations listed above to induce Plaintiffs into signing the MOU and PAA so that Defendants could obtain control of the FCoE Patents.   (Am. Compl. ¶¶ 84–85, 88, 91.)   Plaintiffs fail, however, to allege that they suffered pecuniary loss as a result of their reliance on those statements.   While they identify "damages including lost royalties and diminution of the value of the FCoE Patents" (¶ 92), these damages flow from the alleged *breach* of the contract by Defendants, not from Plaintiffs' being induced to enter into the contract itself.

Accordingly, I find that Plaintiff has failed to state a fraudulent inducement claim on the basis of these alleged misstatements.

### 4. **Fraudulent Concealment**

Plaintiffs also allege in the Amended Complaint that Alessi fraudulently concealed certain material facts before the MOU and PAA were executed:

- AMV and Alessi were both under investigation by the State of North Carolina for securities fraud (¶ 86(1));
- Alessi intended to use the executed MOU and PAA as part of his plan to obtain the FCoE Patents from Hayes by direct assignment from Hayes to Defendant AMV before AMV existed (¶ 86(2));
- Alessi had no intention of causing AMV to retain French-Brown to conduct the initial due diligence (¶ 86(3));

22

- Alessi did not have adequate funds, or did not otherwise intend to personally provide adequate funds, to AMV for performance under the MOU (¶¶ 86(4), 86(5));
- Alessi intended to use the MOU and PAA to induce others into investing into other business entities owned or controlled by Alessi by falsely representing that Alessi and or those separate business entities owned or had rights in the FCoE Patents (¶ 86(6))
- Alessi had no intention of keeping French-Brown involved in and apprised of AMV's efforts to litigate claims against potential infringers of the FCoE Patents if French-Brown did not directly represent AMV in the litigation (¶ 86(7)); and
- Alessi had no intention of honoring the contingencies set forth in the MOU for AMV to retain ownership of the FCoE Patents (¶ 86(8)).

The elements of fraudulent concealment are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) nondisclosure; (4) scienter; (5) reliance; and (6) damage. *Mushahada Int'l USA, Inc.*, No. 04-CV-5270 (ARR), 2005 WL 1421620, at *4 (E.D.N.Y. June 17, 2005). With respect to the duty to disclose, New York recognizes a duty to disclose by a party to a business transaction in three situations: "first, where the party has made a partial or ambiguous statement…second, when the parties stand in a fiduciary or confidential relationship with each other…and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

As discussed *supra*, alleged material facts involving Alessi's lack of intent to perform under the MOU cannot form the basis of a fraudulent concealment claim. Moreover, similar to their fraudulent inducement claim, Plaintiffs fail to allege damage resulting from their reliance on the described nondisclosures beyond the damages resulting from Defendants' alleged breach of contract.

Accordingly, I find that Plaintiffs fail to state a claim for fraudulent concealment.

### 5. **Fraud Claims against AMV**

Plaintiffs allege that after AMV was formed, it ratified Alessi's actions, including Alessi's fraudulent misrepresentations and Alessi's concealment of material facts. (Am. Compl. ¶ 95.)

Because Plaintiffs have not adequately pled their fraud claims against Alessi, I find that Plaintiffs have also failed to plead fraud claims against AMV.

### C.    *Tortious Interference Claim Against Alessi (Fifth Cause of Action)*

Defendants move to dismiss, as inadequately pled, Plaintiffs' claim against Alessi for tortious interference with AMV's performance of its obligations under the MOU. "The elements of tortious interference with contractual relations are (1) the existence of a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach or otherwise render performance impossible, and (4) damages to the plaintiff." *Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*, 59 A.D.3d 473, 476, 873 N.Y.S.2d 679, 682 (N.Y. App. Div. 2nd Dept. 2009).

Under New York law, generally, "[a] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer…" *Craig v. First Web Bill, Inc.*, No. 04-CV-1012, 2004 WL 2700128, at *9 (E.D.N.Y. Nov. 29, 2004). Thus, "a corporate director or officer may be [only] held liable for tortious interference with contract where he or she 'acts for [ ] personal, rather than the corporate interests.'" *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 338 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012). New York courts have "construed personal gain [to mean] that the challenged acts were undertaken 'with malice and were calculated to impair the plaintiff's business for the personal profit of the [individual] defendant.'" *Id.* "Such claims are subject to a heightened pleading standard, which requires that a complaint 'contain [ ] allegations that the acts of the corporate officers [or directors] were done with the motive for personal gain as distinguished from gain to their corporations,' and that the acts were performed with malice and calculated to impair the plaintiff's business for the defendant's profit." *Id.* (quoting

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 110, 744 N.Y.S.2d 384, 391 (2002)).

Plaintiffs plead the existence of a contractual relationship between Fifth App and AMV (Am. Compl. ¶ 102), Alessi's knowledge of the contract (¶ 103), and that Alessi "for his own benefit, sought to induce AMV to breach the contract" (¶ 104), resulting in damages to Plaintiffs (¶ 110). These pleadings satisfy the basic elements of a tortious interference claim.

Plaintiffs additionally plead that Alessi acted outside of the scope of his employment as an officer of AMV (¶ 105), and outside the scope of his authority under AMV's operating agreement (¶ 106), when he "intentionally caused AMV to breach the contract…through…material misrepresentations, concealment of material information, and the deliberate frustration of attempts by AMV members to honor the reversion clause of the MOU" (¶ 108). Plaintiffs also allege that "Alessi intended to use the MOU and PAA to induce others into investing into other business entities owned or controlled by Alessi by falsely representing that Alessi and or those separate business entities owned or had rights in the FCoE Patents" (¶ 86(6)). Finally, the Amended Complaint alleges that "Alessi remains under investigation by the state of North Carolina for self-dealing" (¶ 108), thus providing additional support for their allegation that Alessi acted for his personal gain rather than that of AMV.

Regardless of whether the misrepresentations identified by Plaintiffs constitute actionable fraud, as discussed *supra*, Plaintiffs have adequately pled their theory that Alessi deliberately made false statements and took actions, outside of his role as AMV's CEO, that interfered with AMV's operation and the ability of AMV or its members to fulfill their obligations under the MOU, purportedly with the intention of personally profiting from AMV's ownership of the FCoE Patents.

Accepting Plaintiffs' allegations as true and drawing all inferences in Plaintiffs' favor, I find that Plaintiffs have plausibly stated a claim for tortious interference at this stage of the litigation. I

note that this claim is an alternative claim to Plaintiffs' pending claim against Alessi for breach of

contract since "only a stranger to a contract" may be liable for tortious interference. *Winicki v. City of*

*Olean,* 203 A.D.2d 893, 894, 611 N.Y.S.2d 379, 380 (4th Dep't 1994).

### D.    *Declaratory and Injunctive Relief (Sixth Cause of Action)*

Defendants move to dismiss Plaintiffs' claims for declaratory and injunctive relief.

#### 1.    **Declaratory Relief**

Plaintiffs seek a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201

and 2202, of the parties' respective rights and duties under the MOU and PAA and request that the

Court declare "(a) the PAA as void; (b) that Defendants hold no ownership or assignee rights in the

FCoE Patents; (c) so that future controversies may be avoided, that conduct of Defendants

described in the Amended Complaint is unlawful and in material breach of the MOU and PAA."

(Am. Compl. ¶ 117.)  The Declaratory Judgment Act "is procedural only…and does not create an

independent cause of action." *Norton v. Town of Islip*, 678 F. App'x 17, 22 (2d Cir. 2017).  However,

styling a claim for declaratory relief as a separate count "is not fatal" to the claim.  *Rand v. Travelers*

*Indem. Co.*, 637 F. Supp. 3d 55, 72 (S.D.N.Y. 2022).

The Court retains broad discretion to exercise jurisdiction over the declaratory judgment

action.  *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 122 (S.D.N.Y. 2016).  District

courts within the Second Circuit consider the following factors in the exercise of their discretion: (1)

whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2)

whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the

proposed remedy is being used merely for "procedural fencing" or a "race to res judicata;" (4)

whether the use of declaratory judgment would increase friction between sovereign legal systems or

improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or

more effective remedy.  *Id.* (citing *New York v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011).

When considering the first two factors, courts decline to exercise jurisdiction over a declaratory judgment action that duplicates an available coercive action. *Id.* In New York, duplicative claims arise from the same facts and allege the same damages. *Id.*

Because the relief sought by Plaintiffs—a declaration clarifying parties' legal obligations to one another *vis-à-vis* the validity of the PAA and the lawful ownership of the FCoE Patents—does not duplicate the relief available in either a breach-of-contract claim or tortious interference claim, *i.e.*, monetary damages, I find that Plaintiffs have adequately pled a cause of action for declaratory judgment, and dismissal would be premature at this stage.

## 2. Injunctive Relief

Plaintiffs also seek an injunction, pursuant to the requested declaration, enjoining Defendants from continuing to represent themselves as owners or assignees of the FCoE Patents. (*Id.* ¶ 118.) Defendants argue that Plaintiffs' request for injunctive relief should be dismissed as duplicative of the damages requested for breach of contract, and because it is not an independent cause of action. (Motion at 1, 2.) While it is true that a request for injunctive relief, like a request for declaratory relief, is not a separate cause of action, this fact alone does not mandate dismissal of the request. *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 73 (S.D.N.Y. 2022). A plaintiff seeking injunctive relief must plausibly allege "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The MOU provides that if Defendants breach their obligations under the agreement, then the FCoE Patents revert to Plaintiffs. (MOU ¶ 4.) Plaintiffs have plausibly alleged a breach of contract claim against Defendants. Accordingly, at this early stage of the case, Plaintiffs have

adequately alleged entitlement to the injunctive relief sought, and I respectfully recommend that the request for injunctive relief may proceed.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' Motion to Dismiss the Amended Complaint be denied, except that I respectfully recommend Plaintiffs' claims for fraudulent inducement and fraudulent concealment be dismissed.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:    August 29, 2024
          Brooklyn, New York

28